## CASE DECIDED AT SPECIAL TERM, NEW YORK COUNTY,

### MARCH, 1877.

### In the Matter of FRANK HALLER.

*" Begging for alms or soliciting charity "— what constitutes.*

The relator, a boy about ten years of age, is a cripple, unable to walk and obliged to move on his hands and legs. At the time of his arrest he had been moving from Broadway, on the sidewalk, from John to Wall street, thence down Wall to New street, and had gone some distance in the latter. As he passed along the sidewalk the officer saw him holding out his hands to several persons and receiving money from them, but did not hear him speak to any of them. *Held*, that this constituted a " begging for alms or soliciting charity," within the meaning of the provision of the Revised Statutes, providing for the arrest of any child who shall " be found begging for alms or soliciting charity from door to door, or in any street, highway or public place of any city or town."

WRITS of *habeas corpus* and of *certiorari* to review the arrest and detention of the relator by the Society for the Prevention of Cruelty to Children. The relator was arrested for violating the provisions of the Revised Statutes, forbidding any child from begging for alms or soliciting charity from door to door, or in any street, highway or public place of any city or town. (1 R. S., 633, § 4.)

*Mr. Howe*, for the petitioner.

*Mr. Delafield*, for the commissioners.

Davis, J.:

The papers before me are extremely defective. There is no return to the writ of *habeas corpus*. A warrant of commitment to the commissioners of charities and correction accompanies the writ, from which it may be assumed that the child is in the custody of the commissioners, but where he is detained, or in whose particular custody he is, is not shown; and it must be presumed that the commissioners have placed him in some suitable asylum under their control, instead of in the city prison, or in confinement as a criminal.

The absence of a proper return, however, prevents the court from taking any action on the writ of *habeas corpus* until such return shall be made. The papers under the writ of *certiorari* are also defective. That writ is addressed to the county clerk, amongst others, for the purpose, it is supposed, of bringing up the record of conviction of vagrancy, if one has been filed. There is, however, no return from the clerk, and it does not appear, therefore, whether there is any record on file in his office or not. In the absence of such return, it must be presumed that if such record be necessary, it has been filed by the magistrate, because it would be his duty to file it.

The only return to the *certiorari* is made by the police justice by whom the commitment was made, and the only question made by the counsel for the petitioner upon such return, is, whether there was evidence sufficient to establish that the child was found begging in a street of the city. It appears that Frank Haller is a boy about ten years of age and a cripple, unable to stand, and obliged to move on his hands and legs. At the time of his arrest he had been moving down Broadway on the sidewalk from John street to Wall street, thence down Wall street to New street, and had gone a short distance down New street when he was stopped and taken into custody by the officer. As he passed along the sidewalk the officer saw him holding out his hand to several persons and receiving money from them, but he did not hear him speak to any of them. It is claimed that this silent action on his part was not " begging alms" or "soliciting charity," within the meaning of the statutes. The language of the Revised Statutes is: " If any child shall be found begging for alms or soliciting charity from door to door or in any street, highway or public place of any city or town," etc., etc. (1 R. S., 633, § 4; Delafield's Law Relating to Children, 90.) The words of section 18 of chapter 11 of the Laws of 1833, are: " Soliciting charity from door to door, or in any street, highway or public place within said city." There is nothing in either of these statutes that necessarily requires proof of spoken words to constitute begging for alms or soliciting charity, although such words might in many instances be the best evidence of the offense. The act of begging alms or soliciting charity is the offense condemned by the law, in whatever form that act may be committed, and in many instances words are far less effective to accomplish the end than simple acts. The deaf and

dumb man, real or pretended, who stands with a placard on the breast, and with extended hat or hand, is a solicitor of charity as completely as though he spoke to the passers-by; and so is every one whose diseased or crippled condition appeals to sympathy, if he places himself in a position to attract attention, or passes along the street calling attention by sign, act or look to his unhappy condition, and receives from those who observe him the charity which he is obviously seeking. Indeed, the class of silent beggars who exhibit deformities, wounds or injuries which tell plainer than words their needy and helpless condition are the most successful of solicitors for charity, and especially is this so when the object of alms is a young and helpless child.

The intention of the law is not to punish such children, but to protect and provide for their necessities with tender care, and it would be a great mistake to hold that the statute does not include such as, by reason of their appalling misfortunes, need do nothing but silently attract attention to themselves to receive gifts of charity, unasked for in words, but really solicited by far more touching appeals. The poor boy in this case, while creeping through the throng of people on Broadway and Wall street, and raising his hand to receive their alms, was accomplishing the purpose of begging in a mode far more effective than to have sat at a corner and cried out to every passer-by for charity. It is a mistake, therefore, to suppose that the evidence was not sufficient to justify his being taken into custody and committed to the public charities of the city. The magistrate was right in finding that he was within the provisions of the statute. His crippled condition brought him within the exception of the statute of 1875 (see Laws of 1875, chap. 173, § 1), and it was proper to place him in the custody of the commissioners of charities and correction. In the present condition of the papers, the court can do nothing else than remand him without prejudice to any further proceeding upon a proper return to the writ of *habeas corpus* or any further proceeding by *certiorari*. The court thinks proper, however, to suggest that his custody be restored by the commissioners, who are clothed with full discretion, to his parents, who seem anxious to receive him, with suitable admonition that if they suffer him to be again found begging in the streets he will be arrested and permanently placed in a charitable institution.